KELLEY, Plaintiff in error, V. STATE, Defendant in error.

*No. State 179. Argued June 3, 1971.—Decided June 25, 1971.*
(Also reported in 187 N. W. 2d 810.)

For the plaintiff in error there was a brief by *Melvin F. Greenberg* and *Greenberg, Karp & Heitzman,* all of Madison, and oral argument by *Melvin F. Greenberg.*

For the defendant in error the cause was argued by *William F. Eich,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

WILKIE, J.   Defendant raises three issues in this review:

1.   Is the supplementary instruction (Wis J I—Criminal, Part I, 520) which the trial court gave the jury so coercive as to deprive defendant of due process of law?

2.   Did the trial court err in instructing the jury that mistake as to the age of the complainant is no defense to the crime charged?

3.   Is there sufficient evidence to sustain the verdict?

*The supplementary instruction.*

The jury retired to deliberate at 4:57 p. m. on February 25, 1970.   At 10:10 p. m. they returned, at which time the trial court gave the standard supplemental jury instruction: [1]

*"The Court:* The jury has been out quite a while in this case.   I see no reason why you jurors are not as competent and are not as able or as likely to decide the issues of fact in this case and to decide them right, as the next jury that would be called to determine this case. I do not want you to understand that by what I say you are going to be made to agree or that you are going to be kept out until you do agree.   I do want you to understand that it's your duty to make an honest and sincere attempt to arrive at a verdict.   Jurors should not be obstinate.   They should be open-minded.   They should listen to the arguments of others and talk matters over freely and fairly and make an honest effort as fairminded men and women to come to a conclusion on the issues presented to them.   You will retire to the jury room and resume your deliberations."

The jury retired to further deliberations and at 10:50 p. m. returned a verdict of guilty.   The record contains no objection to this instruction.   Hence this court need

---

[1] Wis J I—Criminal, Part I, 520.

not consider defendant's present objection.[2] Nevertheless, in our discretion, we choose to consider defendant's present contention that this instruction is coercive of the minority members of the jury to abandon their honest convictions as to the defendant's guilt or innocence and conform to the view of the majority in order to reach a verdict. We choose to consider, in addition, defendant's further contention that the instruction implies that if a jury cannot reach a decision, defendant will be retried before another jury and that this also has a coercive effect and has been held to constitute reversible error.[3] In this latter respect defendant points to the following words in the instruction: ". . . *as the next jury* that would be called to determine this case." (Emphasis added.)

Defendant not only urges this court to disapprove the use of the standard supplemental instruction but he also urges this court to substitute for it an instruction modeled on sec. 5.4 (a) of the American Bar Association *Standards Relating to Trial by Jury.*[4]

---

[2] *Mitchell v. State* (1970), 47 Wis. 2d 695, 699, 700, 177 N. W. 2d 833.

[3] *E.g., Plumley v. State* (1968), 4 Md. App. 671, 245 Atl. 2d 111. *See also: Thomas v. United States* (D. C. Cir. Nov. 6, 1970), 8 Crim. L. Rptr. 2141.

[4] "5.4 **Length of deliberations; deadlocked jury.** (a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

"(i) that in order to return a verdict, each juror must agree thereto;

"(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

"(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

"(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

"(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion

The primary concern of the American Bar Association proposed instruction is the elimination of the coercive impact of the widely adopted *"Allen* charge," derived from *Allen v. United States.*[5] The substance of this instruction was summarized by the court in *Allen* as follows:

". . . These instructions were quite lengthy and were, in substance, that in a large proportion of cases absolute certainty could not be expected; that although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority." [6]

This instruction was widely adopted by various jurisdictions.[7] In recent years, however, many courts have expressed disapproval of its use because of its potentially coercive effect on the minority members of a jury to conform their views to those of the majority.[8] The authors of the ABA *Standards* indicate that this is their primary concern with the *"Allen* charge."

---

of his fellow jurors, or for the mere purpose of returning a verdict. . . ." American Bar Association Project on Minimum Standards for Criminal Justice, *Trial by Jury,* Approved Draft, 1968, at page 145.

[5] (1896), 164 U. S. 492, 17 Sup. Ct. 154, 41 L. Ed. 528.

[6] *Id.* at page 501.

[7] Annot. (1965), 100 A. L. R. 2d 177.

[8] *See e.g., Thomas v. United States, supra,* footnote 3; *United States v. Fioravanti* (3d Cir. 1969), 412 Fed. 2d 407; *United*

"Because the instruction contemplated in section 5.4 (a) is to be given prior to the time the jury has retired (and thus prior to the time a minority has been established to exist), and because it makes no reference to the minority but instead charges all jurors to consult with one another, the proposed instruction does not have the coercive impact of the *Allen* charge. . . ." [9]

It is readily apparent that there is a complete absence in the standard Wisconsin instruction of any reference to the minority or majority members of the jury, "but instead charges all jurors to consult with one another" as suggested by the ABA *Standards, supra.* While the Wisconsin supplementary instruction is usually given to the jury after a period of deliberation, this alone does not render it improper. Even if it were given before the jury retired initially, the jury must be reinstructed when it returns without a verdict, since sec. 270.23, Stats., contemplates that the jury may be asked to return for further deliberations in an attempt to reach a verdict.

As noted by defendant, the Court of Appeals for the District of Columbia Circuit, in exercise of its supervisory control over district courts within its jurisdiction, recently ordered those courts to abandon the potentially coercive elements of the *"Allen* charge" and adopt instructions based on the ABA *Standards.* [10] Its concern with the problem had previously been set out in *United States v. Johnson,* [11] and its view of the objective of the ABA *Standards* was stated as follows:

"The ABA Project has not, in any meaningful sense, recommended abandonment of the *Allen* charge. *Neither has it proscribed its use after deadlock.* It has recommended the elimination from the charge of the references

States v. Brown (7th Cir. 1969), 411 Fed. 2d 930; State v. Thomas (1959), 86 Ariz. 161, 342 Pac. 2d 197; State v. Randall (1960), 137 Mont. 534, 353 Pac. 2d 1054.

[9] ABA, *Standards Relating to Jury Trials, supra,* footnote 4, at page 147, sec. 5.4 (a), *Commentary.*

[10] *Thomas v. United States, supra,* footnote 3.

[11] (D. C. Cir. 1970), 432 Fed. 2d 626.

to a deference owed by a minority to a majority. If Section 5.4 (a) of the ABA recommendation, relating to the content of the charge, be compared closely with the Supreme Court's summary in *Allen* itself, . . . it will be seen that this is the only element of the *Allen* charge as approved by the Supreme Court that is eliminated. . . ." (Emphasis supplied.) [12]

An analysis of those decisions cited by defendant which deal with the *Allen* charge indicates the same area of concern.

This court, however, expressed its disapproval of this coercive element of the *Allen* charge thirty years ago in *Mead v. Richland Center*.[13] The drafters of the Wisconsin instruction considered that decision,[14] omitting all references to the minority or majority views. The present Wisconsin instruction charges *all* members of the jury to make an *honest effort* to agree. In addition, the instruction expressly informs the jury members they will not "be made to agree, or . . . be kept out until [they] do agree."

As defendant argues, the reference to the present jury being as competent as "the next jury that would be called to determine this case . . . ," may imply there will be another trial should the jury not be able to agree. However, it is just as reasonable to view the phrase as similar to: "One jury is as competent as the next." There is nothing in the supplementary instruction which would deny defendant a fair trial.

*Instruction on mistake as to complainant's age.*

Defendant contends that the trial court erred in instructing the jury that mistake as to the complainant's age (actually seventeen years old here) was no defense to the crime charged, and further, that the trial court

[12] *Id.* at page 633.
[13] (1941), 237 Wis. 537, 297 N. W. 419.
[14] *See also: Barlow v. Foster* (1912), 149 Wis. 613, 136 N. W. 822; *Boyd v. State* (1935), 217 Wis. 149, 258 N. W. 330.

should have instructed that mistake was such a defense. As was the case with the supplementary instruction just discussed, the record discloses no actual objection to this instruction, nor any request by defendant that the court give the instruction here urged by defendant as proper.

However, in the trial court's decision on motions after verdict, the court made the following statement with respect to defendant's motions:

"*Court:* . . . Some you and I and Mr. Somers considered during the course of the trial, such as the question of whether mistake as to age is a defense; and I have already determined that it is not."

Hence, it appears that the issue was raised at trial, even though there was no objection entered in the record. Given the trial court's ruling, defendant probably was foreclosed from submitting an instruction. We therefore conclude that there was no waiver and the question can be raised here. However, we also conclude that there is no merit to defendant's contentions on the matter.

Clearly the trial court did not err in giving the instruction as it did. The statutes expressly state that mistake as to the age of a minor shall be no defense. As pertinent, sec. 939.43, Stats., provides:

"(2) A mistake as to the age of a minor . . . is not a defense."

Further, sec. 939.23, dealing with criminal intent expressly provides:

"(6) Criminal intent does not require proof of knowledge of the age of a minor even though age is a material element in the crime in question."

Nor does sec. 944.10 require a specific intent; hence none need be proved.[15]

There is no question that the view expressed in the statutes is held in nearly all jurisdictions.[16]  Only one

[15] Sec. 939.23, Stats.

[16] Annot. (1966), 8 A. L. R. 3d 1100.

jurisdiction, California, has held otherwise.[17] In doing so, however, the California court expressly noted that the California legislature had *not* precluded it from doing so:

". . . We hold only that, in the absence of a legislative direction otherwise, a charge of statutory rape is defensible wherein a criminal intent is lacking."[18]

No other court has seen fit to follow *Hernandez*, and at least seven jurisdictions have expressly refused to do so.[19]

The legislative role in this matter is universally accepted. Two states have enacted statutes making mistake as to age a defense to the crime of statutory rape.[20] The Model Penal Code suggests that the defense be available whenever the critical age is "other than ten" years or below.[21]

This is a matter which has been determined by the legislature and is for them to determine. Our legislature not only has not adopted the minority view, but has expressly stated, in two places in the statutes, that this defense shall not be available. That decides the matter.

### Sufficiency of the evidence.

We find the evidence to be sufficient and we see no good reason why we should analyze that evidence in detail here.

*By the Court.*—Judgment affirmed.

---

[17] *People v. Hernandez* (1964), 61 Cal. 2d 529, 39 Cal. Rptr. 361, 393 Pac. 2d 673.

[18] *Id.* at page 536.

[19] *State v. Superior Court of Pima County* (1969), 104 Ariz. 440, 454 Pac. 2d 982; *Eggleston v. State* (1968), 4 Md. App. 124, 241 Atl. 2d 433; *People v. Doyle* (1969), 16 Mich. App. 242, 167 N. W. 2d 907; *State v. Morse* (1968), 281 Minn. 378, 161 N. W. 2d 699; *State v. Vicars* (1971), 186 Neb. 311, 183 N. W. 2d 241; *State v. Moore* (1969), 105 N. J. Super. 567, 253 Atl. 2d 579; *State v. Fulks* (1968), 83 S. D. 433, 160 N. W. 2d 418.

[20] Illinois: Ill. Rev. Stat. (1963), ch. 38, sec. 11–4 (b) (1); New Mexico: 6 Replacement (1953) New Mexico Stats. Annot., sec. 40A–9–3.

[21] Model Penal Code, Proposed Official Draft, sec. 213.6 (1).